[No. 27267.   Department Two.   December 24, 1938.]

L. COLUCCIO, *Appellant*, v. HANSEN & ROWLAND, INC., *et al., Respondents*, RICHARD A. SWAIN *et al., Defendants*.[1]

[1]Reported in 85 P. (2d) 1078.

*Wright, Jones & Bronson* and *Clark A. Eckart,* for appellant.

*Hayden, Metzger & Blair,* for respondents.

GERAGHTY, J.—The plaintiff, L. Coluccio, was engaged in the contracting business. Defendants E. K. Sheble and Richard A. Swain were also in the contracting business as partners, carrying on their business, in part at least, through a corporation, the Sheble Construction Company.

January 31, 1934, Sheble and Swain, as parties of the first part, and Coluccio, as party of the second part, entered into a written agreement, by the terms of which the parties associated themselves, under the firm name of L. Coluccio & Co., as contractors for public and private work. It was provided by the agreement that Coluccio, with the approval of Sheble and Swain, would bid for work, and all work for which he was successful bidder was to be taken in the name of L. Coluccio & Co. No salaries were to be paid to the partners. Sheble and Swain were to finance the jobs and do all the executive office work; Coluccio was to have entire charge of the management and supervision of the partnership operations.

Coluccio owned road-building equipment worth from forty to fifty thousand dollars. He was to provide,

in good working condition, so much of this equipment as might be required in the execution of contracts taken by the partnership. The maintenance of the equipment was to be charged to the cost of each job, and,

"Upon completion of the job second party will be entitled to the rental of the equipment which he has furnished for use on the job at the going quota price for said equipment, less a ten per cent discount, and this amount shall be a part of the cost of the job."

The profits on each job were to be divided one half to Sheble and Swain and one half to Coluccio; losses were to be shared in the same proportion, but, in case of loss, Coluccio was to receive no rental for his equipment. All the equipment purchased "out of the cost of any one or more jobs during the life of this agreement" was to be the property of the partnership.

In the early part of 1936, the partnership was engaged upon three public works contracts, aggregating $445,000, and the defendant Maryland Casualty Company had furnished the required bonds on each of these contracts. At the same time, the defendants Sheble and Swain and their corporation, the Sheble Construction Company, were engaged upon six public works contracts, aggregating approximately a million and a half dollars; the Maryland Casualty Company being also surety on these contracts. Sheble and Swain became financially embarrassed to the extent that they were unable to finance the three contracts taken by Coluccio, whereupon he appealed to the bonding company. As the result of conferences between him, Sheble and Swain, and a representative of the bonding company, on May 6, 1936, certain written instruments were executed by these parties, as well as the National Bank of Tacoma, now the National

Bank of Washington, and Hansen & Rowland, Inc., also defendants.

One agreement provided a plan for financing the Coluccio contracts and supplying sufficient funds for their performance. A special trust fund was to be set up, into which should be paid all proceeds and avails of the outstanding contracts and all moneys and payments whatsoever required by the surety on account of them, or by virtue of assignments made by the contractors to the surety, together with all advances made by the bank, as in the agreement provided. The fund was to be deposited in the bank in the name of Hansen & Rowland, as trustee for Coluccio & Co.

The fund was to be applied solely to certain designated uses, in the order named in the agreement. Payment for labor, materials, and supplies, and "other necessary expenses incurred in the performance of said contract," was first provided for; then the discharge of certain loans theretofore made; payment of advances thereafter to be made by the bank; and, finally, expenses in the administration of the trust. One half of any surplus remaining in the trust fund, after payment of all the expenses incurred in the completion of the contracts and in administering the trust and the exoneration of the surety company, was to be withdrawn from the trust account and paid to Coluccio, and the other half was to be paid into a trust fund, of which Hansen & Rowland was also trustee, created to complete the contracts held by Sheble and Swain or the Sheble Construction Company, in which Coluccio had no interest.

Another agreement, executed on the same day, provided that Coluccio should continue to give all his time and attention to the completion of the contracts taken in his name, and that the fund would advance

him three hundred dollars a month during the progress of the work. It also provided that Hansen & Rowland should be paid for their services 1½ per cent of the money coming into the trust fund, exclusive of the advances made by the bank.

Coluccio, Sheble, and Swain executed a chattel mortgage, covering all construction machinery owned by the partnership, to secure the bonding company against loss by reason of its performance bonds on the Coluccio contracts. There was also executed by the parties a collateral agreement, providing, among other things, that, upon exoneration of the bonding company from all liability attaching under its performance bonds, certain collateral deposited by Coluccio & Co., including the chattel mortgage, should be returned to them. In respect to the chattel mortgage, it was provided that it should be disposed of

" . . . in the following manner, namely: There shall be executed and delivered to the said L. Coluccio a partial release of said chattel mortgage releasing from the lien thereof the one-half (½) interest of said L. Coluccio in the machinery, tools and equipment covered thereby and said chattel mortgage in so far as it thereafter applies to the remaining one-half (½) interest in said machinery, tools and equipment belonging to E. K. Sheble and Richard A. Swain shall be retained by the Company as collateral security to the company to protect it against any and all liability or loss, . . . on account of having signed certain bonds on behalf of the Sheble Construction Company until the termination of the liability of the Company on said last mentioned bonds."

While not material in the present controversy, reference may be made to the fact that Coluccio had also pledged to the bonding company, as security, his personally owned equipment, as well as all the other real and personal property which he possessed.

The three Coluccio contracts were completed and the performance bonds exonerated. After the payment of all expenses except rental claimed by Coluccio for use of his equipment, there remained a surplus in the trust fund of $12,767.08. The trustee, Hansen & Rowland, paid to Coluccio $6,383.54 as his half of the fund, and paid the other half into the Sheble Construction Company trust account, set up, as we have seen, to finance the Sheble Construction Company contracts in which Coluccio had no interest. The property individually pledged by Coluccio was released to him. The bonding company also released from the chattel mortgage Coluccio's one-half interest in the partnership equipment. Coluccio purchased the Sheble and Swain half interest in this equipment for $4,250, and this sum was held in the Sheble Construction Company trust fund, subject to the rights of the bonding company.

In this action, plaintiff, Coluccio, asserts a prior right, as against the defendants, to the money left after completion of the contracts and realized from the sale of the Sheble and Swain interest in the partnership equipment, paid into the Sheble trust account by the trustee.

Two causes of action are stated in his second amended complaint. In the first, he alleges that the use of his machinery was necessary to the completion of the contracts, and that the stipulated rental was a necessary expense in their performance; and he contends that his claim for this rental should be paid out of the Coluccio trust fund before any division of profits to the partners. In his second cause of action, the plaintiff asserts a lien upon the $4,250 deposited in the Sheble trust, in lieu of the Sheble and Swain half interest in the partnership equipment, upon the ground that, there being no outstanding partnership obliga-

tions, he, as a creditor of the partnership, possesses a claim upon the partnership assets superior to the claims of the creditors of Sheble and Swain.

Sheble and Swain did not appear in the action, and default was entered against them. The other defendants appeared and, in their answer, pleaded the trust agreement of May 6, 1936, as a bar to the first cause of action. The chattel mortgage covering the partnership equipment and the collateral agreement are pleaded as a bar to the second cause of action.

The cause was tried to the court without a jury. At the close of the plaintiff's evidence, the court sustained a motion for dismissal made by the defendants other than Sheble and Swain. A judgment was entered allowing the plaintiff recovery against Sheble and Swain in the sum of $11,030.19, and dismissing the action as to the other defendants. The plaintiff appeals from the judgment of dismissal.

When the case came on for trial, the appellant and the respondents stipulated the facts with reference to certain financial issues in the case. On this appeal, there are only two issues: First, whether the court correctly ruled that the rental payable to the appellant for the use of his individual equipment was not a necessary expense in completing the contracts within the terms of the trust agreement; and, second, whether the claim of the appellant against the partnership is entitled to preference as against the sum deposited in the Sheble trust, realized from the sale of the Sheble and Swain interest in the partnership equipment.

In considering the issue raised by the court's ruling on the first cause of action, certain basic facts are to be borne in mind. The appellant, Coluccio, was not involved in the separate contracts of Sheble and Swain or their corporation, the Sheble Construction Company; the trust agreement for completion of the Co-

luccio contracts had relation solely to that end. If the independent operations of Sheble and Swain had not involved them in financial difficulties, no problem would have arisen in the final accounting of the Coluccio contracts.

That Coluccio was entitled, as against his copartners, to payment for the use of his equipment, on any job on which a profit was made, before distribution of any surplus to the partners, must be conceded. It is also to be assumed, in view of the stipulation and the judgment, that a profit was made, at least, on one or two of the Coluccio contracts. The court gave judgment in favor of Coluccio, against his copartners, for $11,030.19, a part of this, at least, being for equipment rental. But Coluccio signed the trust agreement, by the terms of which all future proceeds and avails of the contracts were to go into the Coluccio trust account, to be expended as in the trust agreement specified; the first charge against the trust account being

". . . the payment for labor performed and for materials and supplies furnished and other necessary expenses incurred in the performance of said contract."

The appellant contends that rental for the use of his individual equipment was a necessary expense, to be paid, within the meaning of the trust agreement, before distribution of the surplus to members of the partnership. The respondents contend that the trust agreement superseded, as to them, the provisions of the partnership agreement; and that the rental, payable in the event of profit, was not a necessary expense in contemplation of the trust agreement. While the trial court held that the trust agreement could not be varied by parol evidence, for the purpose of the record, he permitted the appellant to testify to conversations between himself and Mr. Hansen, of Hansen & Rowland, to the effect that he expected payment

out of the funds for the use of his equipment; and that he was told by Mr. Hansen that, when the work was finished, there would be an accounting, and he would get everything that was coming to him.

Accepting the view of the trial court that the whole agreement of the parties was embodied in the written instrument and could not be varied by parol evidence, the question remains whether or not, in view of the circumstances, the rental is to be considered a necessary expense under the trust agreement, to be paid before the division of profits between the partners.

■ The Coluccio trust account was for the completion of the partnership contracts. The contracts were completed and all the advances made by the bank were paid, as well as all charges owing to Hansen & Rowland for services in administering the trust; the performance bonds executed by the Maryland Casualty Company were exonerated. Assuming that the rental would have been a proper charge as between appellant and his copartners, in reason it would seem that, when, on completion of the contracts, the satisfaction of all claims on account of them, and the exoneration of the bonding company, there remained a surplus, appellant should be paid for the use of his individually owned equipment rather than that the amount should go to enrich the Sheble Construction Company account for the completion of contracts in which he was not involved. He could, of course, have waived his right and agreed to this distribution of the fund, but we do not think the trust agreement can be read to import a waiver of his right. Appellant's equipment was required on the work. If it had not been used, the want would have been supplied by the rental of other equipment or by purchase.

The respondents contend that the rental was not a necessary expense, because the appellant, in the part-

nership agreement, had agreed to the use of the equipment on the work. He did agree to its use, but upon the condition that he would be paid rental on each job on which a profit was made.

We think the court erred in granting the motion to dismiss the first cause of action.

As to the second cause of action, we are of the opinion that the court correctly concluded that appellant's evidence did not sustain his right to the relief sought. The appellant pledged to the bonding company everything he possessed in the way of property, including his individually owned equipment. With Sheble and Swain, he joined in the execution of the chattel mortgage on the partnership equipment to further protect the bonding company against loss on his contracts. The chattel mortgage made no reference to the Sheble and Swain contracts. But it was provided in the supplemental agreement, executed by the parties at the same time, that, when the bonding company's obligation on the Coluccio contracts was exonerated, the appellant should hold a half interest in the equipment, released from the mortgage, and that Sheble and Swain should hold the other half interest, subject to the mortgage, as security to the bonding company against loss on their contracts.

The legal effect of this agreement was that, when the Coluccio contracts were completed without loss to the bonding company, followed by the company's release of the chattel mortgage on appellant's half interest, the equipment lost its character as partnership property, and title was thereafter held by the members of the partnership as tenants in common; the undivided interest of Sheble and Swain being subject to the chattel mortgage in favor of the bonding company.

In agreeing to this disposition of the equipment, the appellant waived, as against the bonding company, any

claim to priority by reason of the partnership indebtedness to him. Having waived his right as a creditor of the partnership, the appellant is not aided by the rule he invokes, that a partnership indebtedness to one of its members has priority, as against the partnership assets, over the claims of creditors of one of the partners.

The judgment is affirmed as to the second cause of action, and the case is remanded for further proceedings, as to the first cause of action, in accordance with the views expressed in this opinion.

STEINERT, C. J., BEALS, MILLARD, and SIMPSON, JJ., concur.

[1]Reported in 85 P. (2d) 1053.